IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YEJIDE VAN PETTEN

Plaintiff,

v.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY d/b/a LINCOLN FINANCIAL GROUP

Defendant.

No.

JURY TRIAL DEMANDED

# COMPLAINT

Plaintiff Yejide Van Petten brings this action against Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group, and in support thereof avers as follows:

## Jurisdiction and Venue

1. The jurisdiction of this Court is based upon 28 U. S. C. §1331, in that this Court has original jurisdiction of Counts I, II, III and IV of this Complaint, which are based upon laws of the United States of America, Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. §2000e et seq. ("Title VII"), and the Civil Rights Act of 1866, 42 U. S. C. §1981 ("Section 1981").

2. Venue is proper in this District pursuant to 28 U. S. C. §1391(b) and 42 U. S. C. §2000e-5(f)(3), in that Lincoln Financial Group, of which The Lincoln National Life Insurance Company is a part, maintains its corporate headquarters in Radnor, PA, within this District, the employment records relevant to this action are maintained in this District, and the unlawful employment practices complained of herein were committed in this District.

3. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

4. Plaintiff requests a trial by jury of the claims raised herein.

5. On or about July 20, 2026, Yejide Van Petten filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2026-03260 (the "Charge"), alleging that Lincoln Financial Group discriminated against her based upon her race and sex and retaliated against her.

6. On August 28, 2026, the EEOC issued a Determination and Notice of Rights.

## PARTIES

7. Plaintiff Yejide Van Petten ("Van Petten") is an adult individual residing at 16 Lawrence Lane, Smyrna, DE 19977.

8. Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group ("Lincoln") is an Indiana corporation and part of Lincoln Financial Group, which maintains its corporate headquarters at 150 N. Radnor-Chester Road, Radnor, PA 19087, and does business throughout the Commonwealth of Pennsylvania.

9. Lincoln employs more than 500 employees.

10. At all times relevant hereto, Lincoln was an "employer" and Van Petten was an "employee" within the meaning of Title VII, 42 U. S. C. §2000e(b) and (f).

11. At all times relevant hereto, Lincoln acted through its agents, servants, and employees, each of whom acted within the course and scope of their employment with Lincoln.

## FACTUAL BACKGROUND

### *Van Petten's Employment with Lincoln*

12. Van Petten is a Black/African American.

13. On October 12, 2009, Lincoln hired Van Petten as an Administrative Receptionist.

14. Lincoln later promoted Van Petten to the position of Sales Coordinator, with the formal job title of Specialist, Field Operations Sales.

15. Van Petten earned her life and health insurance licenses during her employment with Lincoln.

16. As a Sales Coordinator, Van Petten supported Lincoln sales representatives by processing requests for proposals for group insurance policies, gathering information from brokers for underwriting, following up with underwriting to deliver proposals on time, and sending out renewals.

17. Lincoln assigned Van Petten to its Group Protection Distribution, Mid-Market Sales Support unit, out of its office in Radnor, PA.

18. Lincoln maintains Van Petten's personnel file at its office in Radnor, PA.

19. In each of her year-end performance assessments from 2014 through 2023, Lincoln rated Van Petten's performance "Solid Performance" or "Exceeds Performance Goals."

20. Before 2025, Lincoln never disciplined Van Petten.

21. In the year 2024 Van Petten's gross earnings were $75,648.61; as of the year 2025, Van Petten was a full-time salaried employee paid $76,312.60 per year, plus an annual incentive bonus and employment benefits.

***<u>Tyler's Supervision and Mendelson's Racial Stereotyping</u>***

22. Audra Tyler ("Tyler") was, at all times relevant hereto, Lincoln's Sales Support Director with authority to hire, fire, discipline, assign, and reassign Sales Coordinators.

23. In or about March 2024, Tyler became Van Petten's direct supervisor.

24. Tyler supervised a team of 9-10 Sales Coordinators in Lincoln's East Region.

25. Van Petten was one of only three Black Sales Coordinators on Tyler's team; the remaining Sales Coordinators were white.

26. Kurt Mendelson ("Mendelson"), a Lincoln Senior Sales Representative, was one of the sales representatives Van Petten supported.

27. Van Petten worked with Mendelson for 11 years without any complaint about her work.

28. On July 24, 2024, Mendelson told Van Petten, "You should really watch yourself because you're starting to become unhinged, and everyone around is noticing."

29. Mendelson's statement invoked the racial stereotype of the "angry Black woman" to Van Petten.

30. Van Petten told Mendelson that his statement was deeply offensive and inappropriate.

31. In November 2024, Mendelson took a one-month paternity leave.

32. During Mendelson's paternity leave, Van Petten covered all of Mendelson's work in addition to her own, working late hours and on weekends.

33. Jeff Lavis, Mendelson's direct manager, gave Van Petten a Shout Out award recognizing her coverage of Mendelson's work, including her late hours and weekend work.

34. In November 2024, Van Petten received a Lincoln "WOW" award, provided in recognition of outstanding performance, hard work, and dedicated sales support initiative, and in her 2024 year-end check-in, Tyler rated Van Petten "Achieves" in both what she achieved and how she achieved it, noted that Van Petten managed a quote workload about two times higher than the prior year, and wrote, "Great job Yejide!"

35. In January 2025, after returning from a Lincoln sales conference, Mendelson told Van Petten, “This year, I want you to be a bully about going after our cases, but I don’t want you to be a bitch about it.”

36. Van Petten found Mendelson’s statement highly offensive, as she had no reputation within Lincoln for being either a “bully” or a “bitch.”

37. In 2025, Tyler permitted Mendelson to report on Van Petten’s work to Tyler daily and weekly.

38. Tyler used Mendelson’s reports to criticize Van Petten in their weekly one-on-one meetings.

39. In early 2025, Tyler issued Van Petten a write-up concerning three sales cases involving a fee form tied to a contract between Lincoln and a general agent, matters that were outside Van Petten’s control.

40. On July 23, 2025, Tyler placed Van Petten on a Formal Verbal Warning.

41. Van Petten asked Tyler to reassign her to a different sales representative.

42. Lincoln refused to reassign Van Petten to a different sales representative.

***<u>Lincoln’s Favorable Treatment of a White Sales Coordinator</u>***

43. Lincoln’s standard practice was to reassign a Sales Coordinator to a different sales representative when a sales representative asked not to work with that Sales Coordinator.

44. Jamie Carder (“Carder”), who is white, was a Lincoln Sales Coordinator on a team supervised by Jennifer Hannah.

45. Several Lincoln sales representatives asked not to work with Carder because of her work performance.

46. Lincoln did not discipline Carder.

47. Lincoln instead reassigned Carder to different sales representatives.

48. Lincoln did not terminate Carder's employment.

49. Mendelson was the only sales representative who complained about Van Petten's work.

***Van Petten's Complaint of Race Discrimination***

50. On September 9, 2025, Van Petten sent a written "Discrimination and Retaliation Complaint" to Tyler, Tyler's manager, his manager, Lincoln Human Resources, and Lincoln's Chief Executive Officer.

51. In the complaint, Van Petten stated that she was being subjected to race discrimination, a race-based hostile work environment, and retaliation.

52. In the complaint, Van Petten identified Mendelson's "unhinged" remark as invoking the "angry Black woman" stereotype.

53. In the complaint, Van Petten stated that she intended to file a Charge of Discrimination with the EEOC.

54. Lincoln's Employee Relations department interviewed Van Petten, Mendelson, and Tyler.

***Retaliation Following Van Petten's Complaint***

55. Lincoln concluded that no discrimination against Van Petten occurred.

56. Ashley Scott ("Scott"), Lincoln's Human Resources Business Partner, called Van Petten to tell her that the investigation was complete and that she should return to work.

57. Scott works out of Lincoln's office in Radnor, PA.

58. Van Petten asked Scott to move her to another team, and Scott refused.

59. Van Petten asked Scott to allow her to work with a different sales representative, and Scott refused.

60. Scott told Van Petten that she would receive a payment only if she left Lincoln, and asked whether that is what Van Petten wanted.

61. Van Petten told Scott that she did not want to leave Lincoln.

62. Scott asked Van Petten a second time whether she wanted to leave Lincoln, and Van Petten again said no.

63. On October 16, 2025, five weeks after Van Petten's complaint, Tyler placed Van Petten on a Written Warning.

***The Pretextual Termination***

64. On November 21, 2025, ten weeks after Van Petten's complaint, Lincoln terminated Van Petten's employment.

65. Lincoln claimed that it terminated Van Petten's employment because of her performance.

66. Among the reasons Lincoln gave for the termination was a quote due on October 20, 2025, the day Van Petten began jury duty.

67. Lincoln's stated reason for terminating Van Petten's employment is a pretext for race discrimination and retaliation.

68. Lincoln did not terminate the employment of Carder, a white Sales Coordinator whose performance several sales representatives had complained about.

***The Elimination of the Sales Coordinator Position***

69. In January 2026, Lincoln announced that it was eliminating the Sales Coordinator position.

70. On July 1, 2026, Lincoln laid off its Sales Coordinators.

71. Lincoln paid the laid-off Sales Coordinators who were not placed in other positions severance equal to two weeks of pay for each year of service.

72. Had Lincoln not terminated Van Petten's employment, she would have remained employed at least through July 1, 2026, and would have received severance equal to 32 weeks of pay or the opportunity to apply for another position with Lincoln.

73. As a result of Lincoln's actions, Van Petten has lost wages, an annual incentive bonus, severance pay, and employment benefits, and has suffered emotional distress, humiliation, and loss of the enjoyment of life.

74. Lincoln's actions towards Van Petten were willful and outrageous in that its motives and conduct as set forth above were malicious, wanton, reckless and oppressive.

## COUNT I

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – DISCRIMINATION BASED UPON RACE

**42 U. S. C. §2000e, et. seq.**

75. Paragraphs 1 to 74 are incorporated herein as if set forth in full.

76. Van Petten is a member of a protected class.

77. Van Petten was qualified for her position as a Sales Coordinator.

78. Lincoln placed Van Petten on a Written Warning, refused to reassign her to a different sales representative, and terminated her employment.

79. Lincoln treated Carder, a white Sales Coordinator about whom several sales representatives complained, more favorably than Van Petten by reassigning Carder rather than disciplining or terminating her.

80. Van Petten's race was a motivating factor in Lincoln's decision to terminate her employment.

81. Lincoln's termination of Van Petten's employment violates Title VII, 42 U. S. C. §2000e-2(a)(1).

WHEREFORE, Plaintiff Yejide Van Petten requests that this Court enter judgment in her favor and against Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group, and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate Title VII, 42 U. S. C. §2000e-2(a)(1), award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses which she has been denied, including back pay, lost incentive bonus, lost severance pay, lost employment benefits, pre-judgment interest, compensatory damages for emotional distress, pain and suffering, humiliation, and loss of the enjoyment of life, punitive damages, an order directing Defendant to remove any designation of Plaintiff as ineligible for rehire from its records, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the court deems appropriate.

## COUNT II

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – RETALIATION

### 42 U. S. C. §2000e, et. seq.

82. Paragraphs 1 to 81 are incorporated herein by reference, as if set forth in full.

83. Van Petten engaged in activity protected by Title VII when she objected to Mendelson's racially stereotyped remark and when she submitted her September 9, 2025 good faith written complaint of race discrimination.

84. After Van Petten's complaint, Lincoln refused to reassign her, placed her on a Written Warning, and terminated her employment.

85. Lincoln placed Van Petten on a Written Warning five weeks after her complaint and terminated her employment ten weeks after her complaint.

86. Lincoln took the foregoing actions against Van Petten because of her protected activity.

87. Lincoln's termination of Van Petten's employment violates Title VII, 42 U. S. C. §2000e-3(a).

WHEREFORE, Plaintiff Yejide Van Petten requests that this Court enter judgment in her favor and against Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group, and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate Title VII, 42 U. S. C. §2000e-3(a), award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses which she has been denied, including back pay, lost incentive bonus, lost severance pay, lost employment benefits, pre-judgment interest, compensatory damages for emotional distress, pain and suffering, humiliation, and loss of the enjoyment of life, punitive damages, an order directing Defendant to remove any designation of Plaintiff as ineligible for rehire from its records, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the court deems appropriate.

## COUNT III

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866 – DISCRIMINATION BASED UPON RACE

## 42 U. S. C. §1981

88. Paragraphs 1 to 87 are incorporated herein by reference, as if set forth in full.

89. Section 1981 guarantees all persons the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, as is enjoyed by white citizens.

90. Van Petten's employment relationship with Lincoln was a contractual relationship within the meaning of Section 1981.

91. But for Van Petten's race, Lincoln would not have placed her on a Written Warning, refused to reassign her, and terminated her employment.

92. Lincoln's termination of Van Petten's employment violates Section 1981.

WHEREFORE, Plaintiff Yejide Van Petten requests that this Court enter judgment in her favor and against Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group, and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate Section 1981, 42 U. S. C. §1981, award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses which she has been denied, including back pay, lost incentive bonus, lost severance pay, lost employment benefits, pre-judgment interest, compensatory damages for emotional distress, pain and suffering, humiliation, and loss of the enjoyment of life, punitive damages, an order directing Defendant to remove any designation of Plaintiff as ineligible for rehire from its records, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the court deems appropriate.

## COUNT IV

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866 – RETALIATION

## 42 U. S. C. §1981

93. Paragraphs 1 to 92 are incorporated herein by reference, as if set forth in full.

94. Section 1981 prohibits retaliation against a person who complains of race discrimination.

95. Van Petten engaged in activity protected by Section 1981 when she objected to Mendelson's racially stereotyped remark and when she submitted her September 9, 2025 good faith written complaint of race discrimination.

96. But for Van Petten's protected activity, Lincoln would not have refused to reassign her, placed her on a Written Warning, and terminated her employment.

97. Lincoln's termination of Van Petten's employment violates Section 1981.

WHEREFORE, Plaintiff Yejide Van Petten requests that this Court enter judgment in her favor and against Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group, and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate Section 1981, 42 U. S. C. §1981, award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses which she has been denied, including back pay, lost incentive bonus, lost severance pay, lost employment benefits, pre-judgment interest, compensatory damages for emotional distress, pain and suffering, humiliation, and loss of the enjoyment of life, punitive damages, an order directing Defendant to remove any designation of Plaintiff as ineligible for rehire from its records, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the court deems appropriate.

/S/ Andrew S. Abramson, Esq.

______________________________

Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Attorney for Plaintiff Yejide Van Petten

Dated: November 13, 2026